Ameenjohn Stanikzy v. Progressive Direct Insurance Company The next case that's going to be argued is Stanisky v. Voights v. Progressive Direct Insurance Company v. Voights. Good morning, Your Honors. I am Scott Neely and I represent appellants in this case and I'd like to reserve five minutes of time. Your Honors, the district court below had discretion and it had an obligation under Rule 23e and under Bluetooth and cases following Bluetooth to carefully scrutinize the settlement for subtle signs of unfairness in distribution between what Progressive had agreed to pay between class counsel and the insured. As just Judge Gould recently wrote in an opinion, this is to smoke out potential collusion between the defendant and plaintiff. In this case, there was no collusion. There also counsel was no true common fund. It was a maximum. It wasn't a fund on behalf of the plaintiffs and it could have been anything. It could have been 1 million, 10 million. It didn't matter because all that money remained in the possession of the defendant unless and until there were valid claims. So why isn't the district court's approach reasonable? The district court's approach is contrary to Bowles. Bowles specifically addressed that issue as a matter of Washington law. Bowles was not a segmented fund. The argument made by the state of Washington and Bowles in 1993 was there was not a segmented fund. It would be funds paid in the future. There was a calculation made of what the amount was and Bowles specifically said as a matter of public policy that they would apply the common fund and apply it to that amount. But Bowles also says that the touchstone is always reasonableness, that there's discretion and that although the percentage of recovery is favored, it's not, I didn't read it as saying it's required without regard to the circumstances. Well, and that's correct. But what Bowles says is that you have a reasonableness standard which goes between 20 and 30 percent of the fund. And you use that and Bowles specifically says you do not look at what the district court did, which is in essence the lodestar. You don't say... Well, the court didn't use it as the method. It used it as a check. Absolutely. Which is not forbidden by any Washington case that I could find. Well, but the result of using it as a check case was to apply, was to give a 5.75 percent fund, which is... Well, that's only if, I mean, you're sort of assuming the answer by doing that because the question really is whether the fund is the amount that was paid out or the fund is this hypothetical number. But every case, Williams was exactly that fact. That was the facts of Williams. That was also the facts of the case Waters from the 11th Circuit. Williams had a settlement term that the fund was $4.5 million. This court specifically in Williams said that you didn't use the claims made. Why? Because the defendant agreed that the settlement fund would be $4.5 million. Well, it was more than that. Here, there was also, I think, reasoning that there was more of an agreement about how the fee would be done. And here, the only agreement is that it was noted that you would ask for fees, not that you would receive them. Well, and that gets to, there are several different situations, Your Honor, and I think it's important to recognize the distinction. You have a situation where there's unfairness and you're doing a Bluetooth analysis. The court in that case rejects the settlement so that the class gets the money. Then you have a situation where the parties have agreed on what the fund is. And in this case, it's based upon the actual amounts that were recoverable. There's a mathematical calculation based upon a sample. It's still entirely hypothetical. That money was not paid out. But, Your Honor, every single solitary case is like that. Very rarely, these days, do you have a segmented fund. There's no case that says you have to have a segmented fund. Bowles says it doesn't matter. Well, there's also, as I see it, no Washington case that forbids what the district court did here. Well, but what Bowles says you have to do is you have to use a percentage of the fund analysis, between 20 and 30 percent. You can deviate from that. But the fee here was 5.75 percent. And Bowles itself cites this court's decision in Six Mexican Workers, which says that you calculate the fund based upon the amounts that could be recovered. So Williams was not a decision that came out of left field, Your Honor. Williams follows Six Mexican Workers. And the public policy issue here, which is basically to say, gee, do we not want to allow claims made settlements? Do we want to allow courts to just have free reign to cut fees in claims made settlements? That was the issue in CAFA. It's not a question of cutting. It's a question of establishing. Well, but the establishment of a fee is, at this point, Your Honor, once there's no longer a Bluetooth issue, it's a question of what the parties agreed to, what the, as Williams says, what the defendant agreed they would pay up to. And then it's a question of following Washington law. They agreed to pay up to 26 percent of a $19.1 million fund. That's what the settlement agreement says. And it says we will request it. And that's what the class was told. So what do you think that virtual means in the settlement agreement? Virtual means exactly what it is. It's a calculation of the amounts, just like in bowls, that can be recovered under the settlement agreement. There is, I've been doing this practice, Your Honor, for 25 years. I have never seen the defendant in a claims made settlement stick the money into an escrow account. And it doesn't ultimately matter as to what the class recovers or what the defendant pays. So unless the argument is that the fact that it's claims made, you can always start looking at what the take rate was, despite the fact the parties agreed as a matter of private contract that that was the fund, despite the fact that Williams says that's how you look at the fund, despite the fact that this issue went up and it was taken out. So Conner at the U.S. Supreme Court said, we're not going to look at this issue. Why? Because the defendant agreed to pay up to that amount of money. What effect, if any, in your view, does the recent Lowry case have? It has no effect, Your Honor. And let me explain why. The Lowry case was very careful to say there is a footnote in the Lowry case where it specifically addresses Williams. And that is because, in this case, the settlement agreement specifically said that the plaintiff will not argue that the amount listed is the fund. So the settlement agreement in Lowry specifically said, and the court says that. Well, the settlement agreement in Williams differed from the one here as well, because it specified that there would be fees based on the entire $4.5 million fund. Which is a little different, I think, than what happened here. No, that is exactly what the settlement agreement says here, Your Honor. If you look at the settlement agreement and the notice, the settlement agreement says, quote, and I'm quoting, Your Honor. What page are you on? I'm quoting from paragraph 33. It's 2ER172. It says, quote, paragraph 33, settlement fund means the virtual common fund of approximately $19.2 million. And then there's a footnote that says, this figure represents the market value of the vehicle. Right. That doesn't say anything about fees. Paragraph 51, which is at, paragraph 51, Your Honor, which is at ER180, says, quote, attorneys' fees and costs were not negotiated between the parties until minutes. That's the difference with, that's the difference from Williams right there. No, no. Okay. But wait a second. Well, no, I don't think there's a difference that the counsel didn't negotiate. You can't negotiate a fee until you've agreed on what the class is going to get. That's black letter law. So that, you know, that's what happened in this case. But what it says in the important language is, quote, class counsel will not ask the court for attorneys' fees in any amount beyond 25% of, 26% of the settlement fund, which is a defined term. So you can substitute in $19.2 million there. That's what the settlement agreement says. And the notice to class members, there were no objections. There wasn't even an opt-out. And 28,000 notices says, quote, and this is at ER, to ER196, it says, the settlement will provide up to $19.2 million to pay claims of those who properly submit claims. It tells people that they will receive 5.4% of their actual cash value. That is the 7.4% minus 27%. So that's counting for a 26% fee. And then it says, how will the lawyers be paid? That's ER226. Class counsel will ask the court for attorneys' fees and expenses up to $5 million. So there is no doubt in this case that exactly as in Williams, we had a defined amount of the settlement fund. We had an agreement, because you have to under Washington law, ask for it as a percentage of the settlement fund. And we don't have some, if there isn't unfairness to the class, and there wasn't, this settlement was a plain vanilla settlement agreement. I mean, are you, do you seem to be suggesting that the district court was obligated to accept what you had agreed to? No. Well, that seems to be your argument as I listen to it, because the district court always has the right to step back and to ask whether or not the amount of attorneys' fees is reasonable in light of the entire litigation. Okay. Well, there's two things the district court has, it has an obligation to make sure that there isn't, Progressive agreed to pay a certain amount of money in essence, okay? Yes. Up to a certain amount. Exactly. Well, they agreed to pay up to a certain amount in fees, and they agreed to pay claims, so they had a certain exposure. If that, too much of that money is going to class counsel, then the settlement has to be rejected. It has to be looked at more carefully to see if it needs to be rejected, because that money needs to go back to the class. Okay? That's Bluetooth. Right. That's not this. That's not it. Exactly. So once that happens, okay, once there is, the class counsel, class is getting treated fairly. It's a private settlement agreement between the parties, and, and this is where it comes in, if we had requested a fee that did not comply with Bowles, that did not comply with Washington law, the district court would have every right to reject it. It wasn't a question of rejection. You keep talking about rejection. The court sets the fee, and Bowles, in Bowles there was an actual benefit to everyone, because the pension benefits went up for everyone. There was no virtual anything. So it's, it's quite a different situation. Well, let me say two things. First of all, I think Williams has addressed this, and I think that six Mexican workers has addressed this issue directly, binding precedent, and six Mexicans cited it. When you're responding to my question, you said you'd reached this agreement, but that what you're suggesting is that the district court was obligated to accept it. Okay. And let me, let me I don't think that's right, because you tell the class that you're going to apply to the court for an award of fees, which suggests, rightfully so, I think, that the district court will make that determination. Okay. Well, but, but there's a difference, Your Honor. If it, and there are cases. We, we cited the, the district court cited Judge Mehta's decision in the district court in, in D.C., strong from the 11th Circuit, the, the, the case that the Waters refused to follow. Both of those are cases where the fee agreement didn't talk about a method of calculating the fee. It didn't have an amount of a settlement fund. It left it up to the district court. If it was left up to the district court, we would not be sitting here. Okay. The question is, though, we have an agreement between parties, private parties, that does not impact the class, that, that complies with Washington law. Now, what the district court then has is discretion to look at this in the conjunction of bowls. And if the district court thought that a 22% fee or a 23% fee was appropriate and justifies that for some other reason than the justification that was used, which is this case was in the middle of class certification when it was settled. It was only litigated for a year and a half. I mean, that is the only justification in the record for cutting the fee. Okay. It's because the case had only developed to a certain point. Yes. Yes. Where she said not cutting. Well, okay. Well, the, the, well, there's a, there's a, there's a range. I mean, that, that, that, that, you know, your, your choice of wording reflects, uh, I think what Judge Pius is suggesting, that you think that is how it has to be and anything less that the district court did is cutting or somehow, you know, not being the entity that is charged with setting an appropriate and reasonable fee in the first instance. I would say that under Bowles, a 5.75% fee based upon the party's settlement agreement is well outside the range. And the only justification for that deviation. But under Bowles, the percentage was of actual benefit to the class members, not virtual benefit because everyone in the class was going to get that increased pension, not just to the 15% of the class. But this court has already determined that issue in Waters. If, if this court believes that Washington would reach a different conclusion on this, then it should certify that question to the Washington State Supreme Court. This court either, Washington's either going to follow Williams and it's going to follow, it's either going to follow Williams and it's going to follow six Mexican workers. In fact, Bowles cites six Mexican workers. It's either going to do that, in which case the judge, I think, deviated from what would have been a 20 to 30% range and did so on the basis of a, in essence, a lodestar analysis. Bowles says you don't do that. Bowles actually cites authority that says we want people to be paid adequate fees so these cases are bought. It cites Newberg, who, who makes the point, as does the manual for complex litigation, that you want to encourage people to settle early. You don't want them to run up the lodestar. As a matter of public policy, Washington doesn't want you running up the lodestar. These courts don't want you running up the lodestar. They also don't probably want manipulation of the settlement fund amount by, when you know that there might be, you know, $50,000, you can call it we'll set aside $5 million or we'll set aside $25 million. That's manipulable as well. With due respect, that issue was exactly what CAFA decided. Congress addressed this very issue in CAFA. And they didn't say you couldn't use claims made settlements. They didn't discourage claims made settlements. They said that you couldn't use coupons. And this court has been very careful. What we've done is we've, we've taken the analysis for a coupon settlement where Congress spoke and we're now moving it into claims made generally. I think by negative implication, Congress knew what the issue was. They didn't decide to address these more generally. And so I agree. The district court has discretion. But that discretion is consistent with Washington law. And Washington law requires between 20 and 30 percent. And if the downward deviation here was because the case was only pending for a year and a half, that itself is inconsistent with Bowles. It's a lodestar. So, so I, I agree, Your Honor, that she had discretion, but, but it's within the discretion of Bowles. If you are, if you are correct and Washington would reach a different conclusion than Waters and, and Williams and six Mexican workers, which they cited, that is an issue you should certify to the Washington State Supreme Court. You ought to ask, does Bowles apply in the context of a settlement that is claims made? Now, I think this court's already answered that. And in fact, the district court recognized it. She just found that, that she literally said that, that Williams was no longer good law. Counselor. Yeah. I'm reticent to interrupt you. Yeah. But at the outset, you indicated you wanted to save some time for a bow. I will. And all your time has been used up. So I think, uh, the number you see there is a number over your time, not under it. But I will, for planning purposes, I'll give you two minutes time extra to make a rebuttal argument. Okay. Thank you very much. Thank you, Counsel. Good morning, Your Honors. My name is Anne Poitts and I represent Appellee Progressive Direct Insurance Company. As we did in the district court, we take no position on the merits of their appeal. I'm certainly happy to answer any questions, but otherwise we are happy to submit on our briefs. Okay. Thank you very much, Your Honors. There's nothing to rebut. I'm about ready to say I don't think there's anything to rebut. Thank you very much, Your Honors. Well, anyway, I think this case is now submitted. And I thank both of you for appearing, helping us in your briefs and for your positions today.
judges: GRABER, GOULD, PAEZ